EXHIBIT B



Diego Rodriguez
1317 Edgewater Drive #5077
Orlando, FL 32804
(208) 891-7728
freedommanpress@protonmail.com
*a Pro Se litigant*

## IN THE FLORIDA MIDDLE DISTRICT COURT

## OF THE UNITED STATES OF AMERICA

| | |
|---|---|
| DIEGO RODRIGUEZ, individually; LEVI ANDERSON, individually; MARISSA ANDERSON, individually; MIRANDA CHAVOYA, individually<br>      Plaintiffs,<br><br>    vs.<br><br>ST. LUKE'S HOSPITAL, a corporation; IDAHO DEPARTMENT OF HEALTH AND WELFARE, a corporation; DAVE JEPPESEN, an individual; TRACY JUNGMAN, an individual; ROXANNE PRINTZ, an individual; CITY OF MERIDIAN, a municipal corporation; KELSEY JOHNSTON, an individual; JEFF FULLER, an individual; STEVEN HANSEN, an individual; SEAN KING, an individual; KENNETH CAYGLE, an individual; CHRISTOPHER MCGILVERY, an individual; CHIEF TRACY BASTERRECHEA, an individual; and DOES I-X, inclusive, unknown parties<br>      Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

The Plaintiffs, DIEGO RODRIGUEZ, LEVI AND MARISSA ANDERSON, and MIRANDA CHAVOYA, complain and allege against the Defendants as follows:

### PARTIES

1. Plaintiff DIEGO RODRIGUEZ (hereinafter "Diego") resides in Orlando, in Orange County, in the State of Florida.

2. Plaintiff LEVI ANDERSON (hereinafter "Levi") resides in Orlando, in Orange County, in the State of Florida.

3. Plaintiff MARISSA ANDERSON (hereinafter "Marissa") resides in Orlando, in Orange County, in the State of Florida.

4. Plaintiff MIRANDA CHAVOYA (hereinafter "Miranda") resides in Orlando, in Orange County, in the State of Florida.

5. Defendant ST. LUKE'S HOSPITAL (hereinafter "Hospital") is a non-profit corporation, organized under the laws of the State of Idaho, with the capacity to sue and be sued. St. Luke's Hospital is sued in its own right and on the basis of the acts or omissions of its officials, agents, and employees.

6. Defendant TRACY JUNGMAN (hereinafter "Jungman"), upon information and belief, is or was employed by St. Luke's Hospital and resides in the County of Ada, and the State of Idaho.

7. Defendant IDAHO DEPARTMENT OF HEALTH AND WELFARE (hereinafter "IDHW"), is a corporation, organized under the laws of the State of Idaho, with the capacity to sue and be sued. The IDHW is the legal and political government entity responsible for the actions of its officials, agents, and employees. The IDHW is sued in its own right and on the basis of the acts or omissions of its officials, agents, and employees.

8. Defendant DAVE JEPPESEN (hereinafter "Jeppesen"), upon information and belief, is or was employed by the IDHW at the time the stated injuries took place, and resides in the County of Ada, and the State of Idaho.

9. Defendant ROXANNE PRINTZ (hereinafter "Printz"), upon information and belief, is or was employed by the IDHW at the time the stated injuries took place, and resides in the County of Ada, and the State of Idaho.

10. Defendant CITY OF MERIDIAN (hereinafter "City") is a municipal corporation, organized under the laws of the State of Idaho, with the capacity to sue and be sued. The City is the legal and political government entity responsible for the actions of its officials, agents, and employees. The City is sued in its own right and on the basis of the acts or omissions of its officials, agents, and employees.

11. At all times material hereto, the Meridian City Police Department is not a separate legal entity which may be sued, rather it is an extension of the City.

12. Defendant KELSEY JOHNSTON (hereinafter "Johnston"), upon information and belief, is employed by City and resides in the County of Ada, and the State of Idaho.

13. Defendant STEVEN HANSEN (hereinafter "Hansen"), upon information and belief, is employed by City and resides in the County of Ada, and the State of Idaho.

14. Defendant JEFF FULLER (hereinafter "Fuller"), upon information and belief, is employed by City and resides in the County of Ada, and the State of Idaho.

15. Defendant SEAN KING (hereinafter "King"), upon information and belief, is employed by City and resides in the County of Ada, and the State of Idaho.

16. Defendant KENNETH CAYGLE (hereinafter "Caygle"), upon information and belief, is employed by City and resides in the County of Ada, and the State of Idaho.

17. Defendant CHRISTOPHER MCGILVERY (hereinafter "McGilvery"), upon information and belief, is employed by City and resides in the County of Ada, and the State of Idaho.

18. Defendant CHIEF TRACY BASTERRECHEA (hereinafter "Chief"), upon information and belief, is employed by City and resides in the County of Ada, and the State of Idaho.

19. Plaintiffs do not know the true names or capacities of defendants sued herein as DOES I through X (hereinafter "Does I-X"). Plaintiffs pray leave that, when the true names and/or capacities of said Defendants are ascertained, Plaintiffs may be permitted to amend this complaint to insert the name, or names, herein with appropriate allegations.

20. Plaintiffs allege, upon information and belief, that each of the DOES I-X acted in bad faith, maliciously, negligently, acted with gross negligence, and/or acted recklessly during the events herein referred to and proximately caused injuries and damages to Plaintiffs as herein alleged.

21. The named defendants are collectively referred to as the "Defendants" in this pleading.

## JURISDICTION AND VENUE

22. Pursuant to Article III, Section 2, Clause 1 of the United States Constitution, "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution…to controversies…*between Citizens of different States*." As the Plaintiffs in this case are citizens of Florida and the Defendants are citizens of Idaho, jurisdiction is therefore proper in this Federal Court.

23. Venue is proper per 28 U.S. Code § 1391.

## FACTS

24. Plaintiff restates each and every allegation previously contained herein. On March 11, 2022, the City's law enforcement officers conducted a traffic stop of Plaintiffs' vehicle in order to ascertain the health condition of Plaintiffs' Levi and Marissa Anderson's ten-month-old infant (hereinafter "infant").

25. During the traffic stop, the City took the Plaintiffs' child into shelter care by claiming the child was endangered in his surroundings and prompt removal was necessary to prevent physical or mental injury to the child (hereinafter "emergency removal").

26. The City took the infant to St. Luke's Hospital where the infant received poor treatment, was contaminated with a C.Diff infection, and was left in a pool of his own vomit.

27. The City and Hospital, by abducting the infant and keeping him from Marissa, his mother, caused physical harm and distress to Marissa who was nursing and therefore suffered from mastitis as a result.

28. The Hospital received compensation from various government entities for having the infant in their possession.

29. The IDHW also received compensation for ordering the removal of the infant even though the IDHW was aware that there was no evidence of danger or injury to the infant, and even though the rules of the Idaho Child Protection Act were not followed.

30. Upon information and belief, at the time of the emergency removal, the City knew that the Plaintiffs and Plaintiffs' family members participated in a protest where protestors gathered on the sidewalk outside the home of Sergeant Brandon Fiscus on April 21, 2020.

31. Upon information and belief, at the time of the emergency removal, the City knew that the Plaintiffs and Plaintiffs' family members were closely associated with Ammon Bundy—who also participated in the protest outside the home of Sergeant Brandon Fiscus, and who is a well-known and outspoken advocate against police abuse—and the Bundy for Governor gubernatorial campaign, who the city and its employees held an antagonistic position against because of Ammon's past experiences and interactions with law enforcement and government.

32. Upon information and belief, the City's knowledge of the Plaintiffs' participation in the April 21, 2020 protest and their close association with Ammon Bundy influenced the City's decision to remove the Plaintiffs' child.

33. Upon information and belief, the Hospital's desire to gain compensation by abusing the Child Protection Act influenced the Hospital's decision to inappropriately take and maintain possession of the Plaintiffs' child.

34. During the traffic stop and emergency removal event, the City's law enforcement officers were captured on video lying to Marissa.

35. Sgt. Christopher McGilvery, employed by the City, promised Marissa that she would not be separated from her child if she cooperated with law enforcement and that she could ride in the ambulance with her child to St. Luke's hospital.

36. After luring Marissa and her baby away from her family, the City's employee, Detective Fuller, notified Marissa that the City was taking Plaintiffs' child into shelter care. Marissa advised Detective Fuller that her child was having trouble digesting proteins, and the child vomited nearly all food except for breast milk. Marissa begged Detective Fuller to allow her to remain with her child so that she could continue to nurse him at the hospital. Detective Fuller ignored the mother's concerns for her child.

37. Detective Hansen, also employed by the City, threatened to hurt Plaintiffs' child if Marissa did not immediately hand the child to a City employee.

38. Detective Hansen told Marissa that the City would take immediate custody of the child and that she could "go on [her] merry way."

39. When Marissa peacefully allowed her child to be taken away by City employee Fuller, Fuller insisted that Marissa would be going to jail for resisting and obstructing.

40. Marissa was immediately arrested and charged for resisting and obstructing.

41. Marissa's arrest was fraudulent and unlawful.

42. During the traffic stop, a City employee forcefully pushed Levi into the driver side exterior of Levi's vehicle without Levi's consent.

43. During the traffic stop, Miranda who is the infant's aunt, was abused by Christopher McGilvery through the use of excessive force.

44. During the traffic stop, Miranda was arrested without cause.

45. Miranda was also subject to intentional infliction of emotional distress through the abuse and misconduct of police officers employed by the City of Meridian.

46. The interactions between the Plaintiffs and the City employees were captured on videos and posted on social media.

47. The videos attracted immediate media attention which provoked scrutiny and criticism of City's conduct. These videos have gone "viral" and have been viewed by a horrified public over 15 million times.

48. On March 12, 2022, at 9:29 a.m., in response to the public outcry, the Defendants published the following defamatory statements (hereinafter "Statements") in a press release (hereinafter "Press Release"):

> On Friday March 11, 2022, Meridian Police received a Health and Welfare referral reference a ten (10) month old child.
>
> Police were informed the child had been admitted to the hospital on Tuesday March 1, 2022 after medical personnel determined the child was suffering from severe malnourishment. While under medical care the child was able to gain enough weight and child was discharged in the care of its parents on Friday March 4, 2022.
>
> During a follow up appointment earlier, this week it was determined the child had again lost a significant amount of weight and when the parents canceled the next follow-up appointment and could not be located, the Meridian Police were contacted and advised this child's condition could lead to severe injury or even death if not treated.
>
> Health and Welfare was able to contact the child's father, who agreed to bring the child in for an examination, but then failed to show up.
>
> Officers attempted to contact the parents and check on the child at a residence in Meridian, but the occupants were uncooperative and refused to let officers check on the child's welfare.
>
> Meridian Police then received a warrant to enter the home, but discovered the parents and the child had left, before officers could check on the child. Garden City Police then located a vehicle driven by the father of the child and they conducted a traffic stop. The Meridian Police took the child into custody in the 3700 block of Chinden Blvd., Garden City, Idaho and More Messages the child was taken to St. Luke's Meridian for medical care.

49. On March 15, 2022, Defendants published additional defamatory statements about the incident on a social media account controlled by the Defendants:

> There has been a lot of misinformation and misunderstanding around how a declaration of imminent danger works within law enforcement and whether a child is removed from the care of their parents. In doing these types of investigations, police are guided by Idaho law. One of the first things that occurs is police receive what

is known as a State Department of Health and Welfare referral. These referrals are called in to Health and Welfare by concerned citizens, community members and mandatory reporters such as doctors. The referrals are prioritized by the Health and Welfare staff which helps determine the steps law enforcement take when dealing with these situations. Some of these cases are determined to be unfounded or do not rise to the level of further police or Health and Welfare involvement. Many of them result in a collaborative effort between the officer and Health and Welfare workers to resolve the issue, give guidance and resources to the children and parents. The majority do not arise to the level of imminent danger or criminal charges.

Based on the information received the higher priority referrals are assigned to Health and Welfare staff and police officers for immediate response. Police must take these investigations very seriously and try to do everything necessary to make sure the child is safe. This involves police meeting with the parents and reviewing living conditions as well as having law enforcement getting eyes on the child to help with determining the best course of action. Frequently officers consult with medical staff and other child welfare experts to determine the best approach to providing care and a safe environment for the child. Many times, the situation is determined not to be as imminent as was initially believed and Child Protective Services along with police determine a course of action for the parents to keep and better care for the child of concern.

On rare occasions either the living conditions or the health of the child is so dire, police declare the child to be in imminent danger and they remove the child from the custody of the parents. It is always the goal to ultimately keep these families together. Within days of the removal, a court hearing is set to determine if the child needs to remain in the custody of the State or if there is a possibility to return the child to their parents with certain requirements are put in place to help ensure the safety and health of the child.

Our investigators are very well versed in these types of investigations and work diligently for the right outcome. These decisions are not made lightly by any of the professionals involved. They cannot allow their investigations be influenced by someone's standing in the community, by the loudest people in the room or by those who recklessly endanger the lives of our officers and their families by posting their addresses and disrupting their

neighborhoods. Our investigators have to remain objective, focusing on the health and wellness of the involved child.

We have all heard the stories of far too many kids who have fallen through the cracks of the system and have suffered the ultimate fate. A year and a half ago, some of our officers and myself carried the casket of a little boy who fell through the cracks, loading him on a plane destined for his final resting place. The Meridian Police Department is determined to stop this from ever happening again.

I am proud to serve with and lead the amazing men and women of the Meridian Police Department, these men and women love to serve this community and do so with honor and integrity.

Chief Tracy Basterrechea

50. As of today's date, the Defendants' statement, published on Facebook (hereinafter "Facebook Post"), has received nine hundred twenty-one (921) "likes" and has been shared one hundred sixty-one (161) times.

51. Defendants' Press Release and Facebook Post ("Statements") accuse the Plaintiffs of abusing or neglecting their child.

52. Defendants' Statements also impugn the honesty, integrity, virtue or reputation of the Plaintiffs.

53. Defendants' Statements also expose the Plaintiffs to public hatred, contempt, or ridicule.

54. The Defendants' Statements immediately damaged the Plaintiffs' reputations and exposed them to public hatred, contempt, or ridicule as reflected by the following comments published on Defendant's Facebook post:

   a. "Thanks so much for all you do and for protecting this little boy from suffering the same fate as other abused children."

   b. "Thank you for the explanation of imminent danger and the process Health and Welfare, Law Enforcement, etc. must go through and for clearing up the misinformation that is being spread."

   c. "Well explained. How can anyone forget Robert Manwill ........his abuse, torure and death haunts Idahoans even after all these years. Keep fighting for those that can't defend themselves..."

d. "Thank you for this information, Chief. Many people do not understand what is happening in most situations. I am sorry that you and your staff are being seen as acting unprofessionally in this situation, considering none of us, except the professionals involved, know the full story."

e. "Knowing what a high bar officials have to reach in order to make these kinds of determinations, I never doubted the necessity to remove this child. If law enforcement or the mandated reporters involved didn't do something and this child died, the same people who are screaming for your heads now would be screaming for your heads for not doing your jobs. They're squeaky wheels and will find something to squeak about regardless. At least this way, the child is safe."

f. "I support and back the officers. Thank you for taking a stand for neglect. I am still wondering why people who back this mother and father? The question is why didn't they keep there appointments. I don't want to here they were sick. I am a mother and I promise you. If my child had an appointment and I was sick. I would make sure and have someone else take them to that appointment . This is simply not ok."

g. "I mean ... if baby is only being breastfeed (which if he is 6+ month he should also be on solids) ... and he is still under weight to the point medical PROFESSIONALS are concerned... mother clearly isn't producing enough to feed baby the amount he needs and should also be supplementing with formula. I 100% stand with children getting fed, properly fed. In a thriving, healthy manner. Thank you to all professionals protecting this child. Starvation can lead to comas which can lead to death."

h. "Theres a lot of abusers in this comment section that are making themselves known. Child malnourishment is nothing to joke about and the failure to act from the parents is disgraceful. Anyone who would justify the parents shouldn't have kids."

i. "This is a state where it's legal to refuse your child a life-saving appendectomy so you can pray over them as they die. And people think getting a kid taken away is easy? These militia idiots practically had to try."

j. "Thank you for standing up for your officers and this child, and standing up to manipulative, corrupt politicians who wish them harm..."

55. Upon information and belief, on March 12, 2022, prior to the publication of the Press Release or the Facebook Post, Sgt. McGilvery learned that the child was stable and would be discharged to a foster parent pursuant to IDHW's protocols.

56. Upon information and belief, the IDHW through its agents or employees was fully aware of the fact that the infant was not in imminent danger prior to his "emergency removal."

57. Upon information and belief, St. Luke's Hospital, through its agents or employees was fully aware of the fact that the infant was not in imminent danger prior to his "emergency removal."

58. Upon information and belief, police officers involved in removing the infant from his parents, were fully aware of the fact that the infant was not in imminent danger prior to his "emergency removal."

## COUNT ONE: KIDNAPPING

59. Plaintiffs restate each and every allegation previously contained herein.

60. Defendants unlawfully seized, abducted, and carried away Levi and Marissa Anderson's infant and received compensation (a financial reward) from various government entities for doing so.

61. Defendants failed to release the infant victim within twenty-four hours after he had been unlawfully seized, confined, kidnapped, abducted, and carried away.

62. At least two or more defendants conspired to violate the rights of the Anderson family and kidnap their child in order to intentionally inflict emotional distress upon them because of the activism of their father, Diego Rodriguez, and their family's close connection to Ammon Bundy.

63. The kidnapping of the Anderson's infant was political retaliation against Diego Rodriguez and Ammon Bundy.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT TWO: CHILD ENDANGERMENT

64. Plaintiffs restate each and every allegation previously contained herein.

65. Hospital specifically kept the infant in their possession while aware that the child needed to be with its mother in order to be nursed and properly nourished.

66. Hospital not only endangered the infant but caused the infant to receive a C.DIFF infection.

67. Hospital endangered the child by leaving the child in a pool of his own vomit.

68. Hospital did not properly nourish the child.

69. Defendants had a duty to ensure the wellbeing of the Anderson's infant. Nevertheless, when Defendants were made aware of the fact that the infant could not eat anything other than his mother's breastmilk, the defendants, Steven Hansen in particular, proceeded to forcefully abduct the infant anyway, which by design or culpable negligence, endangered the child's physical and mental health, safety, and welfare.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

70. Plaintiffs restate each and every allegation previously contained herein.

71. Defendants' conduct was intentional or reckless.

   a. Defendants violently removed infant from Marissa's and Levi's custody.
   b. The Defendants knew or acted with deliberate indifference that the removal was unlawful.
   c. Defendants falsely accused Marissa and Levi of abusing or neglecting their infant.
   d. Defendants also caused other government entities to accuse Marissa and Levi of abusing or neglecting their infant.
   e. Defendants broadcasted the allegations knowing or acting with deliberate indifference that the accusations were untruthful.

72. Defendants' conduct was extreme and outrageous.

73. Plaintiffs suffered severe emotional distress as a result of Defendants' extreme and outrageous conduct.

74. Defendants acted in a manner that intentionally or recklessly caused the Plaintiffs to suffer severe emotional distress.

75. Defendants intentionally took said action as a form of retaliation against Plaintiffs and their associates.

76. Defendants acted maliciously and in bad faith.

77. The defendants acted purposely or recklessly, to cause the Plaintiffs' emotional distress so severe that it could be expected to adversely affect mental health.

78. Hospital intentionally broke its own rules and protocols in order to keep the infant away from its family.

79. The defendant's conduct caused such distress against the Plaintiffs and/or their associates.

80. Specifically, defendants abducted the Anderson's infant, who was the grandson of Diego Rodriguez, as a form of political revenge or retribution against Diego.

81. Defendants also intentionally used the kidnapping of Diego's grandson as form of political revenge or retribution against Ammon Bundy who is a close associate of Diego and his family.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.


## COUNT FOUR: OFFICIAL MISCONDUCT

82. Plaintiffs restate each and every allegation previously contained herein.

83. Defendants, with intent to obtain a financial benefit, and to make political retaliation against the Plaintiffs family, deprived Plaintiffs and the infant of their freedom and peace.

84. Defendants unlawfully abducted the infant knowing that such an act was unlawful and unauthorized.

85. Defendants acted maliciously and in bad faith.

86. Defendants, being agents of a government entity, engaged in a pattern or practice of conduct that deprived the Plaintiffs of rights, privileges, or immunities secured or protected by the Constitution and laws of the United States.


## COUNT FIVE: NEGLIGENT TRAINING AND SUPERVISION

87. Plaintiffs restate each and every allegation previously contained herein.

88. Upon information and belief, the City negligently supervised or negligently trained its employees on conducting an emergency removal under the Child Protective Act.

89. The City knew or should have known that without adequate training to conduct an emergency removal under the Child Protective Act, one or more of its employees would falsely imprison a minor child.

90. Upon information and belief, the City negligently supervised or negligently trained its employees about publishing defamatory statements.

91. The City knew or should have known that without adequately training or supervising its employees about publishing defamatory statements, one or more of its employees would commit the tort of defamation.

92. Upon information and belief, the City negligently supervised or negligently trained its employees to not retaliate against members of the public who protested at the personal residence of Sgt. Fiscus.

93. The City knew or should have known that one or more of its employees would retaliate against Plaintiffs for protesting at the personal residence of Sgt. Fiscus.

94. The City knew or should have known that one or more of its employees was likely to retaliate against the Plaintiffs by publishing defamatory Statements.

95. The City also knew or should have known that one or more of its employees was likely to retaliate against the Plaintiffs by falsely imprisoning their infant.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT SIX: ABUSE OF PROCESS

96. Plaintiffs restate each and every allegation previously contained herein.

97. Defendants misused the legal process for an ulterior purpose.

98. Defendants acted maliciously and in bad faith.

99. Defendants had an ulterior motive or improper purpose in their actions against Plaintiffs and intentionally abused the Child Protection Act improperly.

100. Defendants abused the legal process as noted in order to cause harm to the Plaintiffs.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT SEVEN: UNLAWFUL ARREST

101. Plaintiffs restate each and every allegation previously contained herein.

102. Defendants knowingly and intentionally arrested Marissa Anderson and Miranda Chavoya without evidence, without cause, and without due process.

103. Defendants arrested Marissa and Miranda in order to cause emotional harm and distress.

104. Defendants arrested Marissa and Miranda in order to facilitate the kidnapping of the Anderson's infant.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT EIGHT: INTENTIONAL BATTERY

105. Plaintiffs restate each and every allegation previously contained herein.

106. Defendants intentionally caused harmful or offensive contact with some of the Plaintiffs (Levi Anderson, Marissa Anderson, and Miranda Chavoya, specifically).

107. Defendants acted with a desire to bring about said contact, or they knew that the consequence of that contact was substantially likely to occur.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT NINE: UNLAWFUL AND EXCESSIVE FORCE

108. Plaintiffs restate each and every allegation previously contained herein.

109. Defendants used unlawful and excessive force against Plaintiffs.

110. Defendants intentionally used unlawful and excessive force in order to inflict harm on the Plaintiffs and to cause emotional distress to their family.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT TEN: NEGLIGENCE

111. Plaintiffs restate each and every allegation previously contained herein.

112. Defendants failure to behave with the level of care that a reasonable person would have exercised under the same circumstances brought harm to the Plaintiffs.

113. Defendants were aware of the foreseeable likelihood that their conduct would result in harm.

114. Defendants were aware of the foreseeable severity of the harm.

115. Defendants were aware of the burden of precautions necessary to eliminate or reduce the risk of harm and negligently ignored them.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT ELEVEN: SEXUAL ABUSE

116. Plaintiffs restate each and every allegation previously contained herein.

117. Defendant Sean King unnecessarily and illegally groped and touched Marissa Anderson in an unwanted manner without her consent.

118. Defendant Sean King, under the color of law, abused his power as a police officer to grope Marissa's body, and put his hand up her shirt and down her pants without any reason to do so. Marissa had previously been patted down for weapons just minutes earlier and if there was a genuine concern that a new weapon had mysteriously appeared on her person, a female officer could have been called in to do so.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT TWELVE: DEFAMATION

119. Plaintiffs restate each and every allegation previously contained herein.

120. Defendants communicated information concerning the Plaintiffs to others;

121. The information communicated impugned the honesty, integrity, virtue, and reputation of some of the Plaintiffs, or exposed some of the Plaintiffs to public hatred, contempt or ridicule; and

122. The information was false or can reasonably be read to impart a false innuendo; and

123. Some of the Defendants knew it was false, or reasonably should have known that it was false; and showed reckless disregard or negligence as to the falsity of the defamatory communication; and

124. Defendants' communications omitted true statements about the Plaintiffs in order to impart the false innuendo; and

125. Defendants intended or endorsed the false innuendo.

126. Specifically, the statements from Defendants' Press Release and Facebook Post made untruthful statements that were designed to malign the honesty, integrity, virtue, or reputation of the Plaintiffs and exposed the Plaintiffs to public hatred, contempt, or ridicule by inferring that the Plaintiffs abused or neglected their child and by inferring that the Plaintiffs were evasive and dishonest.

127. Defendants' following statements (hereinafter "Statements") are defamatory:

> a. "Health and Welfare was able to contact the child's father, who agreed to bring the child for an examination, but failed to show up."

>> i. This statement is untrue because the father did not agree to bring the child to the Department of Health and Welfare for an examination. The statement implies the father is untruthful and neglectful;

b. "Officers attempted to contact the parents and check on the child at a residence in Meridian, but the occupants were uncooperative and refused to let officers check on the child's welfare."

    i. This statement is untrue because the officers never asked the occupants for permission to check on the welfare of the child when they visited the referenced location. In fact, one occupant began to record the interaction and asked why Defendant was looking for the Plaintiffs and their child. After the Defendant's law enforcement officers identified themselves, they hurried away without ever asking to check on the child. The Defendant's officers refused to discuss the matter further and departed from the location without informing the occupants that the officers were attempting to check on the child's welfare. This statement is defamatory because it implies the Plaintiffs are evasive and dishonest.

c. "Meridian Police then received a warrant to enter the home, but discovered the parents and the child had left, before officers could check on the child."

    i. This statement is untruthful because the parents and their child were never at the location during the relevant time period. Defendant omitted the fact that the Plaintiff and child were never located at the property in the first place. The omission is designed to insinuate that the Plaintiffs are evasive and dishonest;

d. "The Meridian Police took the child into custody in the 3700 block of Chinden Blvd., Garden City, Idaho and the child was taken to St. Luke's Meridian for medical care."

    i. This statement is untruthful because it omits the fact that St. Luke's Meridian attempted to discharge the child into foster care almost immediately after the child was brought to the facility. In other words, the statement omits the fact that the child was not in immediate need of emergency medical care at the time of the removal. This omission is designed to insinuate that the Plaintiffs neglected or abused their child by implying that the child required emergency medical treatment, but the Plaintiffs refused to provide their child with the care he needed. Upon information and belief, Defendant was in possession of information that the child was medically stable before the Defendant published the defamatory statement;

e. "In doing these types of investigations, police are guided by Idaho law."

    i. This statement is defamatory. It implies that the Plaintiffs were neglectful and abusive because the decision to remove the Plaintiff's child from the custody of the parents was lawful;

f. "Frequently officers consult with medical staff and other child welfare experts to determine the best approach to providing care and a safe environment for the child. Many

times, the situation is determined not to be as imminent as was initially believed and Child Protective Services along with police determine a course of action for the parents to keep and better care for the child of concern."

    i. This statement is untruthful because it implies that medical staff and child welfare experts determined that the Plaintiffs did not take good enough care of the child. It is also untruthful because it implies that it is reasonable for members of the public to believe the Plaintiffs are abusive or neglectful parents since the Defendant methodically follows protocols and consults with experts before the Defendant accuses a parent of abuse or neglect;

g. "On rare occasions either the living conditions or the health of the child is so dire, police declare the child to be in imminent danger and they remove the child from the custody of the parents. It is always the goal to ultimately keep these families together."

    i. This statement is untruthful because it emphasizes the rarity of a police declaration in order to imply the severity of the Plaintiffs' abusive and neglectful parenting;

h. "Our investigators are very well versed in these types of investigations and work diligently for the right outcome. These decisions are not made lightly by any of the professionals involved."

    i. This statement is untruthful because it implies that the decision to remove the Plaintiffs' child was competently and properly made. In other words, it implies that the Defendant is in possession of information that would lead a reasonable member of the community to believe the Plaintiffs were neglectful or abusive. The Defendant has never been in possession of such information.

i. "[Our investigators] cannot allow their investigations be influenced by someone's standing in the community, by the loudest people in the room or by those who recklessly endanger the lives of our officers and their families by posting their addresses and disrupting their neighborhoods."

    i. This statement is untruthful because it implies that the officers and their families are endangered for rightfully removing the child from the Plaintiffs.

    ii. This statement also implies that because the investigators make correct decisions in spite of pressure from loud reckless people, the investigators correctly determined that Plaintiffs were neglectful and abusive.

    iii. Additionally, the statement implies that the investigations are not influenced by the loudest people in the room or by those who post addresses of the officers and disrupt the officers' neighborhoods. However, upon information and belief, at

the time of the emergency removal, Defendant knew that the Plaintiffs and Plaintiffs' family members participated in a protest where protestors gathered on the sidewalk outside the home of Sergeant Brandon Fiscus on April 21, 2020. Upon information and belief, the Defendant's knowledge of the Plaintiffs' participation in the April 21, 2020 protest influenced the Defendant's determination to remove Plaintiffs' child.

128. Defendants had no reasonable grounds for believing the Statements were true.

129. Defendants communicated the Statements intending the result.

130. Defendants' defamatory Statements were designed to divert public criticism of Defendants' misconduct by redirecting public hatred, contempt, or ridicule towards the Plaintiffs.

131. Defendants exposed the Plaintiffs to public hatred, contempt, or ridicule by impugning the Plaintiffs' honesty, integrity, virtue, or reputation.

132. Upon information and belief, Defendants intentionally published the defamatory Statements without legal justification and with ill will.

133. To date, Defendants have not published a retraction of the Statements.

WHEREFORE Plaintiffs moves this Honorable Court to enter an Order for money damages against Defendants together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## DEFAULT

134. A reasonable amount for recovery for damages incurred is $1,000,000 per defendant to each Plaintiff. In the event this matter is contested, Plaintiffs should be awarded such other and/or further relief as determined by the Court according to all Federal law and applicable laws.

## DAMAGES

135. As a result of Defendants' actions, Plaintiffs have suffered damages.

136. Plaintiffs are entitled to have the tribunal consider the sum of money that will fairly and reasonably compensate them for their damages. Those elements of damage include, but are not limited to, the following, both up to the time of trial and beyond:

a.  Damages for unlawful arrest.

b.  Distress and emotional damage for having their infant kidnapped.

c.  Distress and emotional damage for facing retribution for peaceful political activity.

d.  Loss of professional reputation of the Plaintiffs;

e. Lost earnings and lost earning capacity sustained and to be sustained by Plaintiffs;

f. The mental anguish and emotional distress Plaintiffs have suffered or will continue to suffer as a result of the damage to their reputations;

g. The costs of prosecuting and presenting the evidence in this case.

h. Medical costs for subsequent treatment for infant and mother endured as a consequence of the infant's abduction.

137. Considering each of these elements of damages, Plaintiffs have suffered damages in excess of $10,000,000.00 USD.

138. Plaintiffs respectfully request that this Court determine the amount of the losses incurred in the past and to be incurred in the future, not only from a financial standpoint, but also in terms of good health and freedom from embarrassment and worry.


## REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF

139. Plaintiffs hereby request immediate preliminary injunctive relief pursuant to Rule 65. Plaintiffs seek such relief to preclude Defendants from publishing further statements impugning the honesty, integrity, virtue and reputation of the Plaintiffs, or further expose the Plaintiffs to additional public hatred, contempt or ridicule.

140. Plaintiffs further request the Court order the Defendants to publish a retraction to the defamatory statements from the March 12, 2022 press release and the March 15, 2022 Facebook post.


## PRAYER

Plaintiffs pray for judgment against each Defendant as follows, for:

141. An award of special and general damages in an amount to be determined at the time of trial. Said damages are in excess of $10,000,000.00.

142. An award of attorney fees, should an attorney representing the Plaintiffs be retained, and costs incurred herein; and

143. Such other and further relief as the Court may deem just and proper and to which Plaintiffs are entitled under law.

### REQUEST FOR JURY TRIAL

Plaintiffs hereby request a jury trial on all issues in the above-entitled matter. DATED this 8th day of March, 2024.

DATED: March 8th, 2024          By: _Diego Rodriguez_

                                               Diego Rodriguez

DATED: March 8th, 2024          By: _Levi Anderson_

                                               Levi Anderson

DATED: March 8th, 2024          By: _Marissa Anderson_

                                               Marissa Anderson

DATED: March 8th, 2024          By: _Miranda Chavoya_

                                               Miranda Chavoya

## CERTIFICATE OF SERVICE

I certify I served a copy to:

St. Luke's Hospital
190 E. Bannock Street
Boise, ID 82712

[ ]  By Mail
[ X ]  By fax (208-381-1481)
[ X ]  By Email (publicrelations@slhs.org)

Tracy Jungman
417 S 6th St
Boise, ID 82702

[ ]  By Mail
[ X ]  By fax (208-381-1481)
[ X ]  By Email (JungmanT@slhs.org)

Idaho Department of Health & Welfare
450 W State St., Fl 10
Boise, ID 83702

[ ]  By Mail
[ X ]  By fax (208-334-6558)
[ X ]  By Email (Questions@dhw.idaho.gov)

Dave Jeppesen
450 W State St., Fl 10
Boise, ID 83702
(dave.jeppesen@dhw.idaho.gov)

[ ]  By Mail
[ X ]  By fax (208-334-6558)
[ X ]  By Email

Roxanne Printz
450 W State St., Fl 10
Boise, ID 83702
(roxanne.printz@dhw.idaho.gov)

[ ]  By Mail
[ X ]  By fax (208-334-6558)
[ X ]  By Email

City of Meridian
1401 E. Watertower St.
Meridian, ID 83642
(communications@meridiancity.org)

[ ]  By Mail
[ X ]  By fax (208-846-7366)
[ X ]  By Email

Kelsey Johnston
1401 E. Watertower St.
Meridian, ID 83642
(kjohnston@meridiancity.org)

[ ]  By Mail
[ X ]  By fax (208-846-7366)
[ X ]  By Email

Jeff Fuller
1401 E. Watertower St.
Meridian, ID 83642
(jfuller@meridiancity.org)

[ ]  By Mail
[ X ]  By fax (208-846-7366)
[ X ]  By Email

Steven Hansen
1401 E. Watertower St.
Meridian, ID 83642
(shansen@meridiancity.org)

[ ]  By Mail
[ X ]  By fax (208-846-7366)
[ X ]  By Email

Sean King                              [ ]  By Mail
1401 E. Watertower St.                 [ X ]  By fax (208-846-7366)
Meridian, ID 83642                     [ X ]  By Email
(sking@meridiancity.org)

Kenneth Caygle                         [ ]  By Mail
1401 E. Watertower St.                 [ X ]  By fax (208-846-7366)
Meridian, ID 83642                     [ X ]  By Email
(kcaygle@meridiancity.org)

Christopher McGilvery                  [ ]  By Mail
1401 E. Watertower St.                 [ X ]  By fax (208-846-7366)
Meridian, ID 83642                     [ X ]  By Email
(cmcgilvery@meridiancity.org)

Chief Tracy Basterrechea               [ ]  By Mail
1401 E. Watertower St.                 [ X ]  By fax (208-846-7366)
Meridian, ID 83642                     [ X ]  By Email
(tbasterrechea@meridiancity.org)


DATED: March 8th, 2024                 By: */s/ Diego Rodriguez*_____
                                           Diego Rodriguez

JS 44 (Rev. 03/24)                                          **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS DIEGO RODRIGUEZ, LEVI ANDERSON, MARISSA ANDERSON, MIRANDA CHAVOYA, | DEFENDANTS St. LUKE's Hospital, IDAHO Department of Health & Welfare, Dave Jeppesen, Tracy Jungman, Roxanne Printz, City of Meridian, Kelsey Jahnston, Jeff Kolbe, Steven Hansen, Sean King, Kenneth Coyle, Christophe McGoway Tracy Basterrechea |
|---|---|
| **(b)** County of Residence of First Listed Plaintiff ORANGE Co., FL *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant ADA Co. ID *(IN U.S. PLAINTIFF CASES ONLY)* NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |

| II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)* | III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*  *(For Diversity Cases Only)* *and One Box for Defendant)* |
|---|---|

II. BASIS OF JURISDICTION

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question  *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☒ 4 Diversity  *(Indicate Citizenship of Parties in Item III)*

III. CITIZENSHIP OF PRINCIPAL PARTIES

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☒ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |
| | | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S. CODE § 1201 - KIDNAPPING
Brief description of cause:
KIDNAPPING for INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 10,000,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____